524-0076 Good afternoon, Your Honors, Counsel, may it please the Court. My name is Brad Jarka from the Office of the State Appellate Defender, and I represent the Defendant Appellant, Justin Bullard. Counsel's first words to the Court at Bullard's trial were to concede that he was morally, legally, and factually responsible for the death of Nita Mobley. But in contexts like this one, where the State charges both strong probability murder and reckless homicide, the State concedes that the difference between the mental states for those offenses, knowledge and recklessness, respectively, is not easily discernible. So the question, the close question, at Bullard's trial was not whether he was responsible for Nita Mobley's death, but the degree to which he was responsible. And the next words out of Counsel's mouth showed that he was not prepared to help the trial court answer that question. He argued throughout opening statements and then again throughout trial that the only way Bullard could be guilty of first-degree murder is if he intended to strike Mobley's vehicle. But none of the charges in the information alleged immense array of intent, leading Counsel to either expressly or functionally concede Bullard's guilt as to every charged offense. So Counsel's advocacy in this case did not provide meaningful adversarial testing as required by the Sixth Amendment, and this Court should reverse Mr. Bullard's conviction for first-degree murder and remand for a new trial. Now, as we explained in the briefs, we've alleged an effectiveness under both chronic and strickland, but because the facts regarding deficiency are pretty much overlapped for both claims, I'm going to start there. So there are four basic points when it relates to Counsel's deficiency. The first, as I've explained, is that Counsel's global strategy in this case was to attack the conviction for first-degree murder by challenging a mental state the State had not charged. And second, in pursuit of that global theory, Counsel only cross-examined 10 of 19 witnesses. Of those witnesses, at least four of them, Counsel focused his cross-examination on things like determining that Bullard was not out to hurt anyone that evening. In other words, challenging his intent. And of at least two more of those witnesses, Counsel focused his cross-examination on their ability to perceive the accident itself, which no one disputed had occurred. And then the third deficiency is that after Counsel elicited one meaningful piece of cross-examination from the toxicologist about the effect of Bullard's VAC on his ability to perceive, Counsel didn't then use that evidence in any meaningful way in closing argument. He actually doesn't mention it at all in his main closing argument, and then only briefly points to it as an aside before the Court broke to research case law without arguing or explaining why the VAC testimony was relevant to the mental state that was actually charged in this case. And then the fourth deficiency that we've identified in the briefs is that Counsel failed to object to inadmissible other crimes evidence in the form of Austin VAC's recorded statement to police. That evidence implied, without specificity or Counsel's ability to cross-examine, that Mr. Bullard often drank and drove, and the State correctly does not defend that evidence as admissible. I'm just curious, though. This was a bench trial, right? That's correct, Your Honor. The judge went and did some research on his own independently. That's correct. What impact does that have on the argument that you make here today? Two responses, Your Honor. The first is under chronic, it would make no impact because the prejudice analysis drops out. So if this Court finds Counsel's deficiencies to be sufficiently egregious that chronic applies, the identity of this trial as a bench trial would not be part of the analysis because there would be no prejudice. But Your Honor's point about this being a bench trial is the State's main argument against prejudice, and there are a couple of reasons on this record that it doesn't impact the prejudice analysis. So the first is a more broad point, which is that the trial court's engagement with both the facts and the law in this case actually cuts the other way. Because the trial court, throughout closing arguments, interrupted Counsel to ask him, are you sure you don't want to argue about strong probability murder? I agree with you that this was not an intent-based offense. What can you tell me about why this wasn't strong probability murder? So the trial court's questions to Counsel, his desire to take a break to analyze case law, suggest that he was persuadable. And I'll point this Court directly to page, I believe it's 386 of the report of proceedings. After he had rendered his verdict, the trial court acknowledged that this was a difficult decision in deciding between strong probability murder and reckless homicide on the facts of this case. And it's these types of difficult decisions where the persuasive advocacy of Counsel can make a difference. I think one of the fundamental global problems with the State's argument in this regard is that the State's argument isolates the trial judge from the advocacy of Counsel in a way that Strickland does not contemplate. So the focus of Strickland prejudice is traditionally on the closeness of the evidence. Could meaningful advocacy of Counsel have persuaded the trial court to view the evidence in a different way? And so the cases we've cited in the briefs, like People v. Eubanks, where it collects different types of factual scenarios that have resulted in convictions for both first-degree murder and reckless homicide, demonstrates that these types of cases where they involve DUI offenses are sort of definitionally close. So Counsel's advocacy could have provided a meaningful difference in how the trial court understood. One more answer to Your Honor's question about this being a bench trial is the cases that the trial court eventually came back and explained that it had found are distinguishable from this one. So the trial court cited People v. Thomas and People v. Stevens. Both of those cases involved high-speed police chases. Thomas, it was in heavy traffic with an obstructed view of the intersection where the accident took place. And then in Stevens, it was another police chase over 100 miles per hour on an expressway where the defendant had a passenger screaming at him to stop. So both of those cases in several ways involve more egregious facts than we have even in this case. So we pointed this out in the briefs, but the presence of police chasing the defendant is sort of an obvious signal that you are driving illegally. You need to stop. Mr. Bullard, on the other hand, explained in his recorded statement to officers that he thought he was okay to drive. He thought he was only going 50 miles an hour, and he thought that the light was either green or yellow because he doesn't ordinarily run red lights. So there were facts to argue, even based on the cases that the trial court found in its research break, that distinguished this case from those cases in a way that might have persuaded the trial court in a case where the trial court acknowledged the decision between strong probability murder and reckless homicide was a difficult one. But the court didn't exactly say what you said on page 386 of the record. The court went on to state that this was something more. I agree the trial court... 96 miles an hour coming into a crowded town at a controlled intersection, this is something more. So I agree that that's the conclusion the trial court ultimately drew. But the question for Strickland prejudice is only whether there's a reasonable probability that the outcome of the trial could have been different had counsel performed adequately. So we don't have to show that the trial court necessarily would have reached the contrary conclusion if the trial counsel had presented the facts and the argument in a persuasive way that actually challenged the mens rea that the State had charged. So the trial court's statement that this is a difficult decision does not necessarily mean, to Your Honor's point, that it's a foregone conclusion that the trial would have come out the other way if counsel had performed adequately. But I read his statement the same way you do. I don't read it as being close. I read it as him saying, you know, I've handled close cases, but this was something more than a close case. I agree. I think we might then just be reading that statement differently. I think the comments the court also made before and after it took its break to research case law also suggests that the reason the court was taking a break to research case law is because it didn't think there was a self-evident answer about how these facts cashed out under both the strong probability murder and reckless homicide cases. So I think the trial court's entire behavior throughout the closing arguments, both in questioning counsel, taking the break to research case law, and then coming back and saying it was a difficult decision, I think together show that the trial court was persuadable in this case had counsel actually come to court prepared to challenge the mental state that the State had actually charged. With the time left, I would like to take a step back and address a couple of points about chronic. The State throughout its brief, but in particular on page 29, suggests that this cannot have been chronic error because counsel was present, cross-examined witnesses, made an argument, and so at least did something. We would submit that that's actually inconsistent with one of the State's own cases from this court, People v. Elam. So in Elam, this is Elam, E-L-A-M. So in that case, this court rejected a finding of chronic error because the defendant conceded guilt on some lesser offenses, but focused his cross-examination and argument on the elements of the remaining greater offense. And that's one of the main things that distinguishes this case from Elam, which is that counsel's cross-examination, his argument to the trial court, was not actually focused on any element of the remaining charged offense, which was to challenge Bullard's knowledge over recklessness. Everyone agreed in the trial court, including the trial judge himself, that the State had not proven intent. So counsel's strategy would not have required an acquittal, as the State argues, because we know that the trial court accepted counsel's strategy and nonetheless found Mr. Bullard guilty. But chronic requires that the counsel do almost nothing. Well, I think the problem here is that counsel functionally did almost nothing because counsel has a very narrow exception. I think it's been used twice at the Supreme Court. No, I understand that it's a narrow exception. But I will say, so this might be getting a little far afield, but in People v. Shatner, which the State cites in its brief, the Elam Supreme Court was very careful to actually decline to comment on the extent to which Johnson had limited hattery. So chronic is a rare exception, I agree, but it's not an impossible one. And I see I'm out of time, so I'll just conclude with Go ahead and answer. I think it really bears emphasizing that because counsel focused every aspect of his performance at trial, cross-examination, argument to the trial court, responses to the trial judge's questions, and closing argument, counsel focused every aspect of his case on an element of an offense the State had not charged. So even though counsel did something in that he was present and participated, he functionally did not challenge the greatest offense that was in the information. Just a second. No, thank you. You'll have some time after Ms. Jones to argue. Thank you. Ms. Jones? Hello again, Kelly. I bet that happens. I know, it is. May it please the court, counsel. My name is Kara Jones. I'm with the Office of the State's Attorney's Appellate Prosecutor's Office, and I'm here on behalf of the State. I'm going to start with a comment that counsel first made, that the defense counsel's strategy would not have resulted in an acquittal. Defense counsel's strategy and defense counsel's argument throughout this case was that the facts did not rise to the level of murder. More appropriately, that it did not rise above the level of recklessness. If the court agreed with that and found that there was only recklessness here, reckless homicide and first-degree murder, regardless of whether it's intentional or knowing, are mutually exclusive. If you're convicted of reckless homicide, you, as an operation of law, must be acquitted of murder, because the mental states are different. And the same opposite is true, and that's exactly what happened in this case. The court found him guilty of first-degree murder, and as a result acquitted him of a lesser-included offense of reckless homicide. Counsel argues a lot about the fact that the defense counsel argued intent, and the defense counsel did conflate intentional murder with knowing murder. I mean, he did ask questions of the toxicologist, which directly went to the issue of recklessness. I'd point out, however, that that doesn't relieve the state. It's the state's burden. The defendant doesn't have to prove or disprove anything. It's the state's burden to prove the offense charged. And, obviously, the defense attorney argues we're out. The state can't prove that. This is only recklessness, Your Honor. It's only recklessness, Your Honor. It's not murder. The counsel also talks about the fact that this was a difficult decision for the trial court and that some of the cases the court relied upon were simply distinguishable. This sounds a lot like a sufficiency of the evidence argument, one that I'll note he didn't make. He's not challenged his convictions on aggravated DUI, that the evidence was sufficient for that. He's not challenged his conviction for the drag racing. He's not made a sufficiency of the evidence claim, and we know that the trial court carefully considered. The trial court was the tire factor. The trial court heard all the evidence. The trial court was the one who had to determine credibility, and the trial court was the one who had to determine whether the state, who had the burden, proved first-degree murder. The trial court, even though the defendant may have conflated, defense counsel may have conflated intentional and reckless, intentional and knowing murder, the trial court didn't make that, made a distinction between those two. The trial court, which was the one who had to decide this, clearly noted and clearly held that this was, as Justice Kates pointed out, more than recklessness. This was murder. And even if defense counsel's arguments were less than perfect, there's nothing to establish prejudice here, because the trial court considered the distinction between murder and recklessness and concluded that this was more than recklessness. And those facts, Your Honors, I mean, they're outlined, but, you know, were worth mentioning. The evidence was that he'd been drinking all day. He was legally drunk at the time of the accident with a blood alcohol content of 2.6 to 2.43 at the time the accident happened. He knew he was drunk. How do we know he knew he was drunk? He was standing on the roof of a bar and recorded on Snapchat, I'm drunk. He acknowledged that he should not drink and drive, so he knew the risks associated with drinking and driving. Despite that state of knowledge, he got into his truck. He admitted he raced a friend along the hot roadway. Individuals along that roadway saw him swerving, driving at an excessive rate of speed, and driving on the shoulder. In fact, one of those individuals had to pull in the opposite lane of traffic to avoid being hit. His driving, he then got over the town and approached what was indisputably, based upon the testimony, a busy intersection. This was like 9 o'clock at night. This wasn't at 2 a.m. where there wouldn't be much traffic. When he was a short distance from the controlled intersection, he was driving. The evidence showed he was driving between 96 and 103 miles per hour and was not braking. Other cars in the intersection were stopped due to a red light. That light had been red for 35 seconds before the defendant even got to the intersection. And this is with him going almost 100, between 96 and 103 miles an hour. He didn't apply his brakes until one second before the accident. And at the time of the impact, he was still going between 80 and 96 miles an hour. And the video shows, he hit this vehicle. It immediately burst into flames. The person turning, who was in that turning vehicle, just an innocent person going about her day, suffered only minor physical injuries, but she died because she burned to death. These facts were horrendous and more than reckless. I want to address the chronic issue. As Justice Cates pointed out, chronic is very limited. It is not, has very seldom ever been applied. And the case law establishes that to establish per se ineffectiveness or per se ineffectiveness under chronic Hattery-Johnson, you have to show that the counsel failed to entirely subject the prosecution's case to mean and feral adversarial testing. It's not present here. And how do we know that? Let's look at what the defense attorney did. He presented, he developed a theory of defense. Your Honor, this does arrive above the level of recklessness. That was his theory. He presented an opening statement and a closing argument. He objected to the admission of evidence, and he cross-examined witnesses. He questioned witnesses about their ability to view the intersection and whether the defendant appeared to be trying to beat the light, which is what the defendant testified to. Then he obtained concessions of the Snapchat videos, and there were a number of them that showed the defendant speeding and drinking, and, you know, his buddy said, oh, we're just having a good time. But the defense counsel established that those videos occurred over an extended period of time, and they didn't all show the defendant was drinking. He obtained testimony from a forensic pathologist that went directly to the issue of recklessness versus knowing. And that was that the, I'm sorry, not pathologist, toxicologist, said that the risks that he would have, because of his extremely high BAC, that the risks that were present would affect his ability to make decisions, to understand the risks, to have perception of color, depth. So there was that testimony. He got the coroner to acknowledge that he listed the cause of death as an accident, not a homicide. And although the defendant did conflate the mental state, he did argue that this was, doesn't rise to the level of recklessness. He also objected to the use of BAC's deposition or recorded statement. He objected on it for two bases. One was the fact that it was no foundation had been laid, which the state corrected, and the other was that it wasn't proper impeachment. So he did not fail to completely defend. So, I mean, chronic doesn't apply here. This is not a case where there was an absence of any defense. One final. Can I ask you a clarification on that, though? I'm not disputing the general statement there. But in this case, it seems to me that arguably you could say chronic applies to this extent. Chronic is a case where there was no defense presented, essentially. In this case, the allegation is that there was no defense presented to the crime, charge, and elements thereof, because the attorney completely misunderstood what the nature of the proof had. What do you think? I would disagree with that, Your Honor. He didn't specifically talk about knowing, but he did present testimony from the toxicologist, one. And, two, his argument was consistently reckless, reckless, reckless, which by its very nature rejects and defends against first-degree murder, regardless of how it's charged.  Your Honor, we ask that you affirm the defendant's conviction. Any further questions? No, thank you. Thank you. Mr. Brantley. Thank you, Your Honor. I have three points that I'd like to make, so I'll try to be brief. First, the State emphasizes that there is no sufficiency of the evidence claim. That is a red herring. The standard under Strickland prejudice is whether there is a reasonable probability that the outcome of trial could have been different. As cases recited in the briefs like People v. Lucius explains, that means there only need be a significantly less than 50 percent chance that the outcome of trial would have been different had counsel performed adequately. Second, the State argues against chronic error because counsel argued in favor of recklessness. But the reason that counsel gave to argue in favor of recklessness matters. If this Court looks throughout the closing argument in this case, almost every time that counsel insists that the facts of this case arose only to recklessness, he ties that argument directly to his theory that the State failed to prove intent. But intent was not the mens rea charged. It was not a viable defense to argue against intent. So the trial court had in front of it essentially just a concession on recklessness with no legally relevant argument against the greater offense that had been charged. And then third, the State points out that it was its burden and that ties into its bench trial argument that Your Honor and I discussed earlier. But the State's burden is frankly irrelevant to a question of Strickland prejudice because the Sixth Amendment enshrines an independent right to the effective assistance of counsel. And the idea of Strickland is that when cases are close, the advocacy of competent counsel who understands the charges and uses that understanding to elicit favorable evidence and make favorable argument can make the difference in close cases. The trial judge said at best this was a difficult decision. The evidence in this case was close. As People v. Eubanks explained, almost every fact that the State listed that Mr. Bullard committed can be found in the cases that describe recklessness, not necessarily strong probability murder. So because this was a close case, both definitionally under the law and on the facts that were presented to the trial court, counsel's failure to meaningfully challenge the mens rea that the State had actually charged was ineffective under either Cromick or Strickland, and this court should reverse Mr. Bullard's conviction for first-degree murder and demand for a new trial. Does this end here? No, thank you. Thank you very much. Thank you both for your arguments here today. The matter will be taken under advisement. We'll issue an order in due course.